[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This lawsuit was commenced by writ, summons and complaint filed on May 8, 1992 and returnable May 28, 1992 by the plaintiff Commission against the defendants as owners of certain real estate known as 277 Chestnut Hill Road, Colchester, pursuant to the provisions of Connecticut General Statutes 22a-44, claiming clear cutting and excavation in an area designated as Inland Wetlands and seeking injunctive relief as set forth in the prayer for relief.
Counsel for the defendants filed an appearance on May 29, 1992. The defendant Bozena Vartanian filed a pro se appearance in lieu of counsel's appearance on June 30, 1992. Defendant's counsel moved to withdraw on December 8, 1992, which was granted by the court, Hurley, J., on December 28, 1992.
An amended complaint was filed by the plaintiff on December 23, 1992, claiming the same relief as in the original complaint but, making allegations of the complaint more specific and attaching various documents thereto.
On March 11, 1993, new counsel appeared for the defendant CT Page 12725 Vahig Vartanian only. A Motion for Default for Failure to Plead was filed by the plaintiff on March 19, 1993, as to the defendant Bozena Vartanian, which was granted by the clerk on March 19, 1993.
A similar Motion for Default for Failure to Plead was filed by the plaintiff as to the defendant Vahig Vartanian on March 19, 1993 and, was granted by the clerk on March 19, 1993.
An Answer and Four Special Defenses was filed on April 19, 1993 by counsel for the defendant Vahig Vartanian. On May 5, 1993, counsel for Vahig Vartanian moved to withdraw, which motion was granted by the court, Hendel, J., on May 17, 1993.
The defendant Vahig Vartanian subsequently filed an appearance, pro se, which appearance indicates it was signed on May 23, 1993. The appearance bears no file stamp by the office of the clerk. The plaintiff filed a Reply to the Special Defenses on June 23, 1993, and the pleadings were closed.
In the Answer of defendant Vahig Vartanian paragraphs 1, 2 and 3 of the Amended Complaint are admitted.
The court makes the following findings of fact.
Alicia Lathrop was, and is, the Wetlands' Enforcement Officer of the Colchester Conservation Commission, from July 2, 1993 to date. Lathrop is also the Zoning Enforcement Officer since April 4, 1994. Lathrop holds two degrees including one in geology. Lathrop receives and follows up on complaints, reviews wetland permits, considers matters of erosion control and is responsible for enforcement of the Commission's regulations. Lathrop visits wetland sites, reviews maps and works with owners on wetland problems.
Lathrop is familiar with and has visited the Vartanian premises which Lathrop described as being 8 +/- acres with approximately 2 acres being wetlands, a residence and outbuilding being situated therein.
While Lathrop is not a soil scientist, she consider the following factors in determining whether a particular area appears to be a wetland. CT Page 12726
Review of all pertinent maps, identification of flora in the area in question, presence, or lack thereof, of standing water, soil composition and color. The Vartanian driveway, at least in part, is within the designated confines of inland wetlands. Clear cutting has occurred on a portion of the Vartanian premises. Excavation has occurred on the Vartanian premises. Clear cutting means the cutting of all trees, shrubs or growth over 2 inches in diameter at chest level and removal of all vegetation.
Lathrop, prior to her duties as Wetland's enforcement officer, was employed by the County of New London in the Soil and Water District. Lathrop has received training and instruction from the Department of Environmental Protection and attended training seminars.
Lathrop reviewed and is familiar with the Town of Colchester Inland Wetlands and Water Courses' maps (Plaintiff's Exhibit 15), and identified the Vartanian premises thereon, and had the Town engineer outline the same on said map.
A portion of the Vartanian premises falls within the confines of designated wetlands. Plaintiff's Exhibit 15 is still in full force and effect in the Town of Colchester to identify wetlands. Clear cutting creates erosion and affects the eco-biological interaction of wetlands.
The outline in red on Plaintiff's Exhibit 15 by the Town engineer was predicated at least in part on Vartanian's subsurface sewage disposal plan submitted at the time of the construction of the residence on said premises.
Roger Gandolf was the Wetlands' Enforcement Officer in Colchester during the period of January, 1990 to May, 1993. Gandolf is a former State Police Officer who served twenty-four years in that capacity. Gandolf has received training in erosion control, wetland litigation sedimentation and perimeters of authority.
Gandolf first became aware of a problem on the Vartanian premises on receipt of a complaint in December, 1991 or January, 1992 to the effect that clear cutting was going on in a regulated wetland area. Gandolf visited the Vartanian CT Page 12727 premises shortly after receiving the complaint, observed the clear cutting, observed a water course going through the area and visited the Vartanian residence. Gandolf requested that Vartanian cease and desist from any further clear cutting or excavation in the wetland area.
Although Vartanian came to Gandolf's office to seek a permit, the Vartanians did not cease. The Commission placed this complaint on its agenda and at a meeting, conducted on March 11, 1992, the Commission voted to conduct a site walk on the subject premises.
A site walk by the commission was conducted on March 21, 1992 on the Vartanian premises at which Vahig Vartanian was present as was the witness Gandolf.
The total clear cut area appears to be at least one acre. [Plaintiff's Exhibit 9.]
The commission members on their visit to the premises observed devastation of identifiable wetlands and wetland habitat. Rutted areas caused by machinery were observed. Plaintiff's Exhibit 16 shows the extent of the devastated area.
After the site walk an emergency meeting was held by the Commission on March 21, 1992 and a cease and desist order was authorized.
During the course of the site walk, Vartanian told Commission member Amara that he could do as he pleased on his property.
The Commission gave notice to Vartanian of a Show Cause hearing to be held on March 30, 1992 at 7:00 p. m.
The witness Gandolf and the Commission members were present at the Town Hall at the appointed time but Vartanian did not appear. The Commission sent notice to Vartanian of the results of its March 30, 1992 meeting. The witness Gandolf testified that as late as October, 1992 his further viewing of the premises indicated further activity in the regulated area and non compliance with the Commission's directive. CT Page 12728
The area filled in by excavated material was described by the witness Gandolf as a "red maple swamp. "
Gandolf tried over an extended period of time to secure the cooperation of Vartanian so that the problems and violations could be addressed and solved, all to no avail.
Jennie Contois is the First Selectlady of the Town of Colchester and has held that office for the past 3 years.
The Selectman's office authorizes payment of attorneys fees. The Town, to date, has been billed $7113.92 for legal services as a result of the Vartanian's wetland problem. Contois testified that Vartanian was abusive to her staff used vulgar language and threatened her life. The testimony of Contois is credible and the court accepts the same. Colchester police officers have been required at the Town Hall when Vartanian visits to maintain the peace.
The defendant has at all relevant times owned the property known as 277 Chestnut Hill Road in Colchester, Connecticut (the "Subject Property"). [Exhibit P-2.]
At some time prior to early January, 1992, the defendant caused the portion of the Subject Property which lies between the dwelling and Chestnut Hill Road (the "Disturbed Area") to be cleared of substantially all vegetation, and engaged in excavation and filling operations therein (the "Regulated Activities").
In compliance with Connecticut General Statutes §§ 22a-28,et seq., the Commission adopted into its regulation a map, depicting generally the wetlands and watercourses in the Town of Colchester. [Exhibit P-15.]
Most of the Disturbed Area was within Wetlands as defined by Connecticut General Statutes § 22a-38(15) and Colchester's Inland Wetlands Regulations in effect at the time, and substantially all of the Disturbed Area was within regulated areas as defined by the Regulations. [Exhibits P-1, P-3, P-5, P-9, P-13, P-15, P-16, P-17, P-18.]
In a January 28, 1987 application to the Commission, the defendant represented to the Commission that the Disturbed Area was within a wetlands and regulated area. CT Page 12729
The deed whereby the defendant took title to the subject property incorporates by reference a plan which depicts the Disturbed Area as within regulated areas. [Exhibits P-2 and P-3.]
The defendant completed an application [Exhibit P-7], but failed to pay the fee to complete the application.
In spite of the incompleteness of the application, the Commission placed the application on its agenda and discussed the application at its March 11, 1992 meeting. However, although Mr. Gandolf personally informed the defendant of the meeting, the defendant failed to attend the meeting to speak in support of the application.
The defendant received the March 23, 1992 notice. [Exhibit P-10, Return Receipt signed by B. Vartanian.]
As a result of the March 30, 1992 hearing, and the Commission's and Mr. Gandolf's observations, the Commission on April 6, 1992 served on the defendant, by certified mail, on April 6, 1992 a final cease and desist order, requiring that the defendant stop all work within regulated areas. [Exhibit P-12.]
The defendant received the April 6, 1992 cease and desist order. [Exhibit B-12 (Return Receipt card signed Vartanian, Vahig in manner substantially similar to signature on defendant's July 22, 1993 "Answer" filed with the court.)]
In spite of the issuance of the cease and desist order, and the ample notice provided to the defendant through conversations with Mr. Gandolf and with the Commission, the defendant continued to engage in excavation and filling operations within regulated areas upon the property, in willful defiance of the Commission's authority. [Exhibits P-9, P-13, P-16 and P-17.]
At no time did the defendant obtain a permit from the Commission to engage in clearing, excavation and filing operations within the Disturbed Area.
The Colchester Conservation Commission is the duly authorized and constituted Inland Wetlands Agency for the Town CT Page 12730 of Colchester.
At all relevant times, the Commission complied with Connecticut General Statutes § 22a-42a(a) through the enactment of regulations providing for the manner in which the boundaries of Inland Wetlands and Water Course areas are to be established, amended or changed in the Town of Colchester, and by completing the other requirements of that statute. Throughout the course of the enforcement process in this case, the Commission substantially complied with all other relevant statutes and regulations.
At each stage of the enforcement process, the Commission informed the defendant of the statutory and regulatory requirements, provided adequate notice to defendant of its regulatory actions, provided adequate opportunities for the defendant to be heard, and provided more than ample opportunity for voluntary compliance by the defendant.
The clearing, excavation and filling activities performed by the defendant constituted "regulated activities" under Connecticut General Statutes §§ 22a-38(13), 22a-42a, 22a-44 and Colchester Inland and Wetlands Regulations §§ 4.1.0, 4.2.0 and 8.2.0. [Exhibit P-18.]
The Commission's determination, that the defendant was engaging in Regulated Activities within regulated areas, was in accordance with the Connecticut General Statutes and the Regulations, and was properly made by the Commission through reference to representations by the defendant, information on file and field inspections.
The defendant's activities fell within no exemption to the statutes and regulations.
Specifically, the two exemptions asserted by the defendant, under Connecticut General Statutes §§ 22a-40a(2) and (4) are inapplicable by their terms, as the activities over which the Commission exercised jurisdiction in this case involved neither construction of a residential home, nor maintenance of existing structures or landscaping and clearly included the removal and deposition of significant amounts of material onto a wetland and/or watercourse.
The defendant's violation of the statutes and regulations CT Page 12731 was willful.
No discriminatory action or intent on the part of the Town has been shown. Chaplin v. Balkus, 189 Conn. 445, 448
(1983) (to establish equal protection claim, must show pattern of discrimination, consciously practiced); Bianco v. Darien,157 Conn. 548, 559-60 (1969).
It may be that Vartanian has found it difficult to adjust to the Connecticut and Colchester statutes and regulations having come from a different culture prior to residing here.
However, the Commission reached out its hand on numerous occasions over a protracted period of time in a spirit of cooperation but was met with hostility at every turn.
Even now in a conciliatory posture the Commission has withdrawn its request that the wetland area be repaired with the observation that nature has already started the healing process.
Contrary to what Mr. Vartanian believes the Town and the Commission's hand is not set against him.
In accordance with its original prayer for relief, the court enters the following orders.
The court directs that the defendants immediately and permanently cease and desist and refrain from conducting activities on their premises in any regulated area without a valid permit issued by the Colchester Inland Wetlands Commission.
The court directs that the defendants install such erosion control as the Inland Wetlands Commission may require.
The court directs that on the giving of proper notice by the Commission, that the defendant's permit inspection of the premises to verify compliance.
Plaintiff's counsel asks the court to impose a $10,000.00 fine on the defendants and to require a surety bond of $5,000.00 conditioned upon future non violation of the Inland Wetland Regulations. CT Page 12732
Plaintiff's counsel also requests the allowance of $18,171.92 in counsel fees.
Having in mind that the defendants were pro se and came from a divergent ethnic background, the court feels that these requests, if granted, would probably spell financial ruin for the defendants.
The court imposes a fine of $1000.00 and will not require a surety bond.
The court allows the attorneys fees already billed and paid by the Town in the amount of $7113.92 and also fees incurred of $7,938.00 in accordance with the provisions of22a-44(b).
While the attorneys' fees are substantial, it must be remembered that the matter has gone on for a long time and the defendants could have avoided this problem by even a modicum of compliance and cooperation instead of obstruction and defiance.
Austin, J.